Bobby Saadian*
bobby@wilshirelawfirm.com
Justin F. Marquez*
justin@wilshirelawfirm.com
Thiago M. Coelho*
thiago@wilshirelawfirm.com
Robert J. Dart*
rdart@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
(*pro hac vices forthcoming)

David C. Indiano, USDC PR Bar No. 2000601
david.indiano@indianowilliams.com
Jeffrey Williams, USDC PR Bar No. 202414
jeffrey.williams@indianowilliams.com
**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street, Third Floor
San Juan, Puerto Rico 00912
Telephone: (787) 641-4545
Facsimile: (787) 641-4544

*Attorneys for Plaintiff
and Proposed Class Counsel*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DENISE A. BERNAL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>METRO PAVIA HEALTH SYSTEM, INC., a corporation, and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Denise A. Bernal ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action based upon her and her son's personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

*alia*, the investigation of their attorneys.

## NATURE OF THE ACTION

1.    Defendant Metro Pavia Health System ("Defendant" or "Metro Pavia") operates a network of hospitals in Puerto Rico and the Caribbean.  Thousands of patients count on Metro Pavia to treat them competently and to handle their sensitive medical and personal information with care.

2.    These patients reasonably expect the highest level of protection for their private identifiable information, when giving highly sensitive information such as their Social Security numbers and medical information to medical providers and insurers.  What these patients do not expect, and did not expect, was that their personal and sensitive information would be harvested by unauthorized individuals.

3.    Plaintiff, individually and on behalf of those similarly situated persons (hereafter, "Class Members"), bring this class action to secure redress against Defendant for its reckless and negligent violation of patient privacy rights.  Plaintiff and Class Members are patients of Metro Pavia who were exposed by a data breach.

4.    Plaintiff and Class Members suffered significant injuries and damages.  On information and belief, the security breach compromised the full names, addresses, dates of birth, gender, financial information, and social security numbers (referred to collectively as "PII") of Plaintiff and the Class Members.

5.    As a result of Defendant's wrongful actions and inactions, unauthorized individuals gained access to and harvested Plaintiff's and Class Members' PII.  Plaintiff has been forced to take remedial steps to protect herself from future loss.  Indeed, all Class Members are currently at a very high risk of identity theft and/or credit fraud, and prophylactic measures, such as the purchase of credit monitoring, are reasonable and necessary to prevent and mitigate future loss.

6.    As a result of Defendants' wrongful actions and inactions, patient information was stolen.  Many Metro Pavia patients have had their PII compromised, have had their privacy

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages.

7.    Further, despite the fact that the breach was discovered on February 12, 2019, Defendants did not begin notifying their customers of the event until June 18, 2019, over four months later.

### THE PARTIES

8.    Plaintiff Denise A. Bernal is a Puerto Rico citizen residing in San Juan, Puerto Rico.  Plaintiff received medical care from Metro Pavia, pursuant to which Metro Pavia obtained Plaintiff's PII.

9.    Plaintiff is informed and believe that, as a result of the data breach that took place at Metro Pavia, Plaintiff's PII was accessed by hackers.  As a result, Plaintiff has to purchase credit and personal identity monitoring services to alert her to potential misappropriation of her identity and to combat risk of further identity theft.  At a minimum, therefore, Plaintiff has suffered compensable damages because she will be forced to incur the cost of a monitoring service, which is a reasonable and necessary prophylactic step to prevent and mitigate future loss.  Exposure of Plaintiff's PII as a result of the data breach has placed her at imminent, immediate and continuing risk of further identity theft-related harm.

10.    Defendant Metro Pavia is a corporation with its principal offices located in Guaynabo, Puerto Rico.

11.    Plaintiff is unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 10.  Plaintiff will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 10 if and when ascertained.  Plaintiff is informed and believes, and thereupon alleges, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings alleged herein and that each of the defendants sued herein as a DOE proximately caused injuries and damages to Plaintiff and Class Members as set forth below.

12.    As used herein, "Defendants" shall refer to Metro Pavia and Does 1 to 10, collectively.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

3

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since some of the Class Members are citizens of a State different from the Defendants, there are more than 100 putative class members, and the amount in controversy exceeds $5 million.

14.     The Court has personal jurisdiction over Defendants because Plaintiff's and Class Members' claims arise out Defendants' business activities conducted in Puerto Rico, where Defendants' headquarters are located.

15.     Venue is appropriate in this District because, among other things: (a) Plaintiff resides in this District, (b) Defendants maintain offices in this District, where they conduct substantial business; (c) Defendants directed their activities at residents in this District; and (d) many of the acts and omissions that give rise to this Action took place in this judicial District.

16.     Venue is further appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct a large amount of their business in this District, and because Defendants have substantial relationships in this District.

## FACTUAL ALLEGATIONS

### A.   The Data Breach

17.     Defendant Metro Pavia operates a network of hospitals in Puerto Rico and the Caribbean.  On February 12, 2019, two Metro Pavia hospitals, the Pavia Hospital Santurce and the Pavia Hospital Hato Rey, suffered a computer hack in which money was demanded in exchange for the release of the computer system.  During this hack, critical patient PII was exposed to the hackers.

18.     On June 18, 2019, over four months later, Defendants began sending letters to the breach victims to inform them of the data breach.

19.     Defendants made repeated promises and representations to their patients, which formed a part of their contracts with those patients, that they would protect Plaintiff's and the Class Members' PII from disclosure to third parties, including taking appropriate steps to safeguard their electronic databases.  Both Hato Rey and Santurce hospitals' websites contain a

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

page titled "HIPAA Law," which states that Metro Pavia "understands that the information on the patient's health is exclusively personal and we are committed to protecting the patient's privacy," and that "[a]ccording to the law we must . . . [m]ake sure to maintain the privacy of medical information that identifies you." (*See* Privacy Notice, translated on July 8, 2019, **Ex. A**). The Privacy Notice proceeds to list the specific ways in which Metro Pavia is permitted to disclose PII, none of which were present in the current case, and states that no other disclosures will take place without written authorization.

20.    Defendants promised that they would not disclose Plaintiff's and the Class Members' PII to any unauthorized third parties. In fact, they allowed hackers to obtain it.

### B. Defendants Had an Obligation to Protect Personal Information under Federal Law.

21.    Defendants are entitles covered by HIPAA (*see* 54 C.F.R. § 160.102) and as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information").

22.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information." 45 C.F.R. § 164.502. HIPAA also requires that Defendants implement appropriate safeguards for this information. 45 C.F.R. § 164.530(c)(1). HIPAA additionally requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable—i.e. non-encrypted data—to unauthorized third parties. 45 C.F.R. § 164.404; 45 C.F.R. § 164.402.

23.    Additionally, HIPAA requires that Defendants:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights, *see* 45 C.F.R. § 164.312(a)(1);

(b) Implement policies and procedures to prevent, detect, contain, and correct security violations, *see* 45 C.F.R. § 164.306(a)(1);

(c) Protect against any reasonably anticipated threats or hazards to the security or

integrity of electronic protected health information, *see* 45 C.F.R. § 164.306(a)(2);

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, *see* 45 C.F.R. § 164.306(a)(3);

(e) Ensure compliance with the HIPAA security standard rules by its workforce, *see* 45 C.F.R. § 164.306(a)(4); and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b).

24.    Defendants are additionally prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act.  *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015).

### D.  *Applicable Standards of Care*

25.    In addition to their obligations under federal law, Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and the Class Members.

26.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

27.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to create and implement reasonable data security practices and procedures to

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

protect the PII in their possession, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

28.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to implement processes that would detect a breach of their data security systems in a timely manner.

29.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to act upon data security warnings and alerts in a timely fashion.

30.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to purchase insurance or other health care services from Defendants' or to entrust PII with Defendants.

31.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to disclose in a timely and accurate manner when data breaches occurred.

32.    Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices.  Defendants received the PII from other parties with the understanding that Plaintiff and the Class Members expected their PII to be protected from disclosure.  Defendants knew that a breach of its data systems would cause Plaintiff and the Class Members to incur damages.

### E.  Stolen Information Is Valuable to Hackers and Thieves

33.    It is well known, and the subject of many media reports, that PII is highly coveted and a frequent target of hackers.  Especially in the technology industry, the issue of data security and threats thereto is well known.  Despite well-publicized litigation and frequent public announcements of data breaches, Defendants maintained an insufficient and inadequate system to protect the PII of Plaintiff and Class Members.

34.    Legitimate organizations and members of the criminal underground alike recognize the value of PII.  Otherwise, they would not aggressively seek and pay for it.  As previously seen in one of the world's largest data breaches, hackers compromised the card

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

holder data of 40 million of Target's customers.  *See* "Target: 40 million credit cards compromised," CNN Money, Dec. 19, 2013, *available* at http://money.cnn.com/2013/12/18/news/companies /target-credit-card/.  DataCoup is, in contrast, just one example of a legitimate business that pays users for personal information.  *See* http://money.com/money/3001361/datacoup-facebook-personal-data-privacy/.

35.    PII is highly valuable to hackers.  Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.  PII that is stolen from the point of sale are known as "dumps."  *See* Krebs on Security April 16, 2016, Blog Post, *available at* https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/.  PII can be used to clone a debit or credit card.  *Id.*

36.    Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details.  During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

37.    In addition to PII, a hacked email account can be very valuable to cyber criminals. Since most online accounts require an email address not only as a username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.[1]

38.    As shown below, a hacked email account can be used to link to many other sources of information for an identity thief, including any purchase or account information found in the hacked email account.[2]

///

///

---

[1] Identity Theft and the Value of Your Personal Data, Trend Micro (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data.

[2] Brian Krebs, The Value of a Hacked Email Account, Krebs on Security (June 13, 2013, 3:14 PM), https://krebsonsecurity.com/2013/06/the-value-of-a-hacked-email-account/.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

1    ///

2    ///

3    ///

4    ///

5    ///

6    ///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137



39.    Hacked information can also enable thieves to obtain other personal information through "phishing."   According to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[3]

**D.  The Data Breach Has Resulted and Will Result in Identity Theft and Identity Fraud**

---

[3] https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf

COMPLAINT AND DEMAND FOR JURY TRIAL

40.    Defendants failed to implement and maintain reasonable security procedures and practices appropriate to protect the PII of Plaintiff and Class Members.

41.    The ramifications of Defendants' failure to keep Plaintiff's and Class Members' PII secure is severe.  According to Javelin Strategy and Research, "one in every three people who is notified of being a potential fraud victim becomes one . . . with 46% of consumers who had cards breached becoming fraud victims that same year."  "Someone Became an Identity Theft Victim Every 2 Seconds Last Year," Fox Business, Feb. 5, 2014 *available* at http://www.foxbusiness.com/personal-finance/2014/02/05/someone-became-identitytheft-victim-every-2-seconds-last-year.html.

42.    In the case of a data breach, simply reimbursing a consumer for a financial loss due to fraud does not make that individual whole again.  On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."  *See* "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, *available at* https://www.bjs.gov/content/pub/pdf/vit12.pdf.    In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id*. at 11.

43.    A person whose PII has been obtained and compromised may not know or experience the full extent of identity theft or fraud for years.  It may take some time for the victim to become aware of the theft or fraud.  In addition, a victim may not become aware of fraudulent charges when they are nominal, because typical fraud-prevention algorithms fail to capture such charges.  Those charges may be repeated, over and over again, on a victim's account, without notice for years.

44.    The damage from PII exposure is particularly acute in the medical context.  A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.  *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010, 5:00 a.m.),

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/. Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all. *Id.*

### F.    Annual Monetary Losses from Identity Theft are in the Billions of Dollars

45.    According to the BJS, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014.  Among identity theft victims, existing bank or credit card accounts were the most common types of misused information. *Id.*

46.    Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013.  There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

See GAO, Report to Congressional Requesters, at 33 (June 2007), *available at* http://www.gao.gov/new.items/d07737.pdf.

47.    As a result of the data breach, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are also subject to a higher risk of phishing and pharming where hackers exploit information, they already obtained in an effort to procure even more PII. Plaintiff and Class Members are presently incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies. In addition, Plaintiff and Class Members now run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

### G.  *Plaintiff and Class Members Suffered Damages*

48.    The exposure of Plaintiff's and Class Members' PII to unauthorized third-party hackers was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, use, and disclosure, as required by their contracts with Plaintiff and the Class Members, and federal law.  The data breach was also a result of Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' PII in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and federal law

49.    Plaintiff's and Class Members' PII is private and sensitive in nature and was inadequately protected by Defendants.  Defendants did not obtain Plaintiff's and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

50.    As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting data breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

51.    Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    The improper disclosure, compromising, and theft of their PII;

b.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of unauthorized third-

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1 party hackers and misused via the sale of Plaintiff's and Class Members'

2 information on the Internet black market;

3 c.     The untimely and inadequate notification of the data breach;

4 d.     Ascertainable losses in the form of out-of-pocket expenses and the value of their

5 time reasonably incurred to remedy or mitigate the effects of the data breach; and

6 e.     Ascertainable losses in the form of deprivation of the value of their PII, for which

7 there is a well-established national and international market.

8 ///

9 **CLASS ACTION ALLEGATIONS**

10 52.     Plaintiff bring this action on her own behalf and on behalf of all others similarly

11 situated under Rule 23(a), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.  The Class

12 is divided into two Classes as follows:

The Puerto Rico Class:

All persons residing in the Territory of Puerto Rico whose Personal
Identifying Information was compromised as a result of the data breach
discovered by Metro Pavia Health System, Inc. on February 12, 2019.

The National Class:

All persons residing in the United States whose Personal Identifying
Information was compromised as a result of the data breach discovered
by Metro Pavia Health System, Inc. on February 12, 2019.

53.     Excluded from the Class are: (a) Defendants, including any entity in which any

of the Defendants has a controlling interest, is a parent or a subsidiary of, or which is controlled

by any of the Defendants; (b) the officers, directors, and legal representatives of Defendants;

and (c) the judge and the court personnel in this case as well as any members of their immediate

families.  Plaintiff reserves the right to amend the definition of the Class if discovery, further

investigation and/or rulings by the Court dictate that it should be modified.

54.     *Numerosity*. The members of the Class are so numerous that the joinder of all

Class Members is impractical.   While the exact number of Class Members is unknown to

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff at this time, given the number of patients who trust their care to Defendants, it stands to reason that the number of Class Members is in the thousands. Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as account information.

55. *Commonality and Predominance.* There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendants owed a duty of care to Plaintiff and Class Members with respect to the security of their PII;

b. What security measures must be implemented by Defendants to comply with their duty of care;

c. Whether Defendants met the duty of care owed to Plaintiff and the Class Members with respect to the security of the PII;

d. Whether Defendants have a contractual obligation to Plaintiff and Class Members to use reasonable security measures;

e. Whether Defendants have complied with any contractual obligation to use reasonable security measures;

f. What security measures must be implemented by Defendants to comply with their contractual obligations to use reasonable security measures;

g. Whether Defendants' acts and omissions described herein violated the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E.

h. Whether Defendants' acts and omissions described herein violated the Federal Trade Commission Act, 15 U.S.C. § 45;

i. What security measures, if any, must be implemented by Defendants to comply with their contractual and statutory obligations;

j. The nature of the relief, including equitable relief, to which Plaintiff and Class Members are entitled; and

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

k.   Whether Plaintiff and Class Members are entitled to damages, civil penalties and/or injunctive relief.

56.   *Typicality*. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of each of the other Class Members, was exposed and/or improperly disclosed by Defendants.

57.   *Adequacy of Representation*. Plaintiff will fairly and adequately represent and protect the interests of the Class Members.   Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiff intend to prosecute this action vigorously.   Plaintiff and Class Members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief. Therefore, all Class Members will be fairly and adequately represented by Plaintiff and her counsel.

58.   *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.   There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court.   Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

59.   Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

(Breach of Express And/or Implied Contractual Promise)

60.   Plaintiff repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 59, inclusive, of this Complaint as if set forth fully herein.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

61.    Defendants were parties to contracts with Plaintiff and the Class Members for medical services, pursuant to which Defendants obtained Plaintiff's and the Class Members' PII.

62.    As a part of these contracts, Defendants promised to maintain adequate safeguards to protect the PII from disclosure to unauthorized third parties, and also promised not to disclose the PII to unauthorized third parties.  Defendants promised that "the information on the patient's health is exclusively personal and we are committed to protecting the patient's privacy," and that "[a]ccording to the law we must . . . [m]ake sure to maintain the privacy of medical information that identifies you."  It also states that "[a]ny other use or disclosure" of PII "that is not described in this Notice of Privacy Practice requires written authorization from the patient."  Ex. A.

63.    Accordingly, Defendants' promises to safeguard and protect the PII are contractually binding upon Defendants with regard to Plaintiff and each of the Class members.

64.    The contractual duty to protect and safeguard Plaintiff's and the Class Members' PII, which Defendants promised to undertake, was, even apart from the language of the contracts, a term of the contracts by operation of law under the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E., and under the Federal Trade Commission Act, 15 U.S.C. § 45.  Under applicable common law, all laws in place at the time a contract is entered which are relevant to the subject matter of that contract become binding terms of the contract.  Therefore, the HIPAA Privacy Rule and Security Rule, and the FTCA also formed a contractual term in each of Defendants' contracts with Plaintiff and the Class Members.

65.    Finally, the promise to safeguard and protect Plaintiff's and the Class Members' PII, and keep that PII from being accessed by third parties, was implied as a matter of law because Defendants and Plaintiff and the Class Members entered their agreements with the expectation and implied mutual understanding that Defendants would strictly maintain the confidentiality of the PII and safeguard it from theft or misuse.

66.    Therefore, Plaintiff and Class Members entered contracts for medical services

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

with Defendants in which Defendants agreed to: (a) implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' personal information from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiff's and Class Members' PII.

67.    Plaintiff and the Class Members would not have provided and entrusted the PII to Defendants in the absence of the proper security safeguards and the promise to keep their PII safe.

68.    Plaintiff and the Class Members fully performed their obligations under their agreements with Defendants.

69.    Defendants breached the contractual promises by failing to: (a) implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiff's and Class Members' PII.

70.    Plaintiff's and the Class Members' expectation was that their PII would be safeguarded and protected.  Therefore, they agreed to pricing terms to which they would not have agreed had they known that their PII would not be protected.  Further, due to the fact that their PII was not protected, Plaintiff and the Class Members incurred losses associated with the loss of PII privacy, including theft, identity theft, and the risk of theft and identity theft, along with the necessity of cancelling credit cards and paying for additional protection through the market.

71.    As a direct and proximate result of Defendants' breaches of the contractual promises alleged herein, Plaintiff and Class Members sustained actual losses and damages in an amount according to proof at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

(Breach of Covenant of Good Faith and Fair Dealing)

72.    Plaintiff repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 71, inclusive, of this Complaint as if set forth fully herein.

73.     Applicable law implies a covenant of good faith and fair dealing in every contract.

74.     Plaintiff and Class Members entered contracts with Defendants for medical services.

75.     Plaintiff and the Class Members performed all of their duties under their agreements with Defendants.

76.     All of the conditions required for Defendants' performance under the contracts have occurred.

77.     Incorporated in the contracts as a matter of law was the covenant of good faith and fair dealing, which prevents a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.   The implied covenant imposes on a contracting party not only the duty to refrain from acting in a manner that frustrates performance of the contract, but also the duty to do everything that the contract presupposes that the contracting party will do to accomplish its purposes.

78.     Here the implied covenant of good faith and fair dealing required Defendants, under the terms of their agreement which stated that Defendants would protect the PII, to safeguard and protect from disclosure to third parties the PII of Plaintiff and the Class Members which was turned over to Defendants only for the purposes of performing medical services. Plaintiff and the Class Members could not enjoy Defendants' services without the safeguarding and protection of the PII.

79.     Defendants breached the covenant of good faith and fair dealing implied in their contracts by engaging in the following conscious and deliberate acts: (a) failing to implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) failing to ensure that unauthorized parties were not provided access to Plaintiff's and Class Members' PII. Defendants' failure to protect the PII of Plaintiff and Class Members frustrated Plaintiff's and the Class Members' rights to the benefit of their bargains with Defendant, to enjoy the professional services of Defendant without incurring risks of property and identity theft.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

18

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

80.    Plaintiff and Class Members have lost the benefit of their contracts by having their PII compromised and have been placed at an imminent, immediate and continuing risk of identity theft-related harm.

81.    As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## THIRD CAUSE OF ACTION

### (Negligence)

82.    Plaintiff repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 81, inclusive, of this Complaint as if set forth fully herein.

83.    As described above, Defendants owed Plaintiff and the Class Members duties of care in the handling of PII, which duties included keeping that PII safe and preventing disclosure of that PII to all unauthorized third parties.

84.    Additionally, Defendants owed a duty to Plaintiff and the Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII as required by HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, and Federal Trade Commission Act, 15 U.S.C. § 45. This legal duty arises outside of any contractual, implied or express, responsibilities that Defendants had between Plaintiff and Class Members, as it is completely independent of any contract.

85.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."  45 C.F.R. § 164.502. HIPAA also requires that Defendants implement appropriate safeguards for this information. 45 C.F.R. § 164.530(c)(1).  HIPAA additionally requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable—i.e. non-encrypted data—to unauthorized third parties.  45 C.F.R. § 164.404; 45 C.F.R. § 164.402.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

86.    Additionally, HIPAA requires that Defendants:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights, *see* 45 C.F.R. § 164.312(a)(1);

(b) Implement policies and procedures to prevent, detect, contain, and correct security violations, *see* 45 C.F.R. § 164.306(a)(1);

(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, *see* 45 C.F.R. § 164.306(a)(2);

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, *see* 45 C.F.R. § 164.306(a)(3);

(e) Ensure compliance with the HIPAA security standard rules by its workforce, *see* 45 C.F.R. § 164.306(a)(4); and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b).

87.    Plaintiff and Class Members are within the class of persons that HIPAA was intended to protect.

88.    Defendants violated the above listed regulations by disclosing the PII to third parties and by failing to implement adequate security measures to protect the PII, including failing to:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights;

(b) Implement policies and procedures to prevent, detect, contain, and correct security violations;

(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information;

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information;

(e) Ensure compliance with the HIPAA security standard rules by its workforce; and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information.

89.    Defendants also violated §§ 164.404 and 164.402 by failing to provide timely notice of the breach to Plaintiff and the Class Members.

90.    The harm that occurred as a result of the security breach is the type of harm that HIPAA was intended to guard against. HIPAA directly requires subject entities to protect the

health information of individuals such as Plaintiff and the Class Members.

91.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

92.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

93.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a data breach at a company as large as Defendants', including, specifically, the damages that would result to Plaintiff and Class members.

94.    The harm that occurred as a result of the security breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

95.    Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

96.    In addition to their obligations under state and federal law, Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

and the personnel responsible for them, adequately protected the PII of Plaintiff and the Class Members.

97.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

98.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

99.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to implement processes that would detect a breach of their data security systems in a timely manner.

100.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to act upon data security warnings and alerts in a timely fashion.

101.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to purchase insurance or other health care services from Defendants' or to entrust PII with Defendants.

102.    Defendants owed a duty to Plaintiff and the Class Members, who entrusted them with sensitive PII, to disclose in a timely and accurate manner when data breaches occurred.

103.    Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices.  Defendants collected Plaintiff's and the Class Members' PII.  Defendants knew that a breach of their data systems would cause Plaintiff and the Class Members to incur damages.

104.    Defendants breached those duties of care by adopting inadequate safeguards to protect the PII, and, on information and belief, failing to adopt industry-wide standards in their supposed protection of the PII, resulting in the disclosure of the PII to unauthorized third

22

parties.

105.    As a direct and proximate result of Defendants' failure to adequately protect and safeguard the PII, Plaintiff and the Class members suffered damages.  Plaintiff and the Class Members were damaged because their PII was accessed by third parties, resulting in increased risk of identity theft and theft of property, and for which Plaintiff and the Class members were forced to adopt costly and time-consuming preventive and remediating efforts.  Plaintiff and the Class Members were also damaged in that they paid for services in an amount that they would have refused to pay had they known that Defendants would not protect their PII.  Plaintiff and the Class Members accepted pricing terms which they would not have agreed to had they known that Defendants would not protect their PII.

106.    Defendants acted with wanton disregard for the security of Plaintiff's and the Class Members' PII.  Defendants knew or should have known that Defendants had inadequate computer systems and data security practices to safeguard such information, and Defendants knew or should have known that hackers were attempting to access the PII of health care providers' databases, such as Defendants'.

107.    The injury and harm suffered by Plaintiff and the Class Members was the reasonably foreseeable result of Defendants' breach of their duties.  Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff and the Class Members to experience the foreseeable harm associated with the exposure of their PII.

108.    A "special relationship" exists between Defendants and Plaintiff and the Class Members.  Defendants entered into a "special relationship" with Plaintiff and the Class Members when they contracted with Plaintiff's and the Class Members to provide them with medical care and obtained Plaintiff's and the Class Members' PII from them.  As providers of health care services, Defendants stand in a fiduciary or quasi-fiduciary relationship with Plaintiff and the Class Members.

109.    Plaintiff and the Class Members have suffered monetary injury in fact as a direct and proximate result of the acts committed by Defendants as alleged herein in an amount to be

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

23

proven at trial but in excess of the minimum jurisdictional amount of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

1.    For compensatory damages in an amount according to proof at trial;

2.    For affirmative injunctive relief mandating that Defendants implement and maintain reasonable security procedures and practices to protect Plaintiff's and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure;

3.    For costs of suit and litigation expenses;

4.    For attorneys' fees under the common fund doctrine and all other applicable law; and

5.    For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: August 28, 2019                    Respectfully submitted,

                    /s/ David C. Indiano
                    David C. Indiano USDC Bar No. 200601
                    Jeffrey M. Williams USDC Bar No. 202414
                    Vanesa Vicéns-Sánchez USDC Bar No. 217807
                    Christopher A. Dávila USDC Bar No. 304103
                    **INDIANO & WILLIAMS, P.S.C.**

                    /s/ Thiago M. Coelho
                    Thiago M. Coelho*
                    Justin F. Marquez*
                    Robert Dart*
                    **WILSHIRE LAW FIRM**
                    (*pro hac vices forthcoming*)

                    *Attorneys for Plaintiffs and the proposed class*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137